**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **ED BUTOWSKY,** | § | |
| | § | |
| **PLAINTIFF,** | § | |
| | § | |
| **v.** | § | **CASE NO. 4:19-cv-00577** |
| | § | |
| **DOUGLAS H. WIGDOR,** | § | |
| **WIGDOR LLP, ROD WHEELER,** | § | |
| | § | |
| | § | |
| **DEFENDANTS** | § | |

## RULE 12(B)(2) & (5) MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENT SERVICE OF PROCESS

Pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) and 12(b)(5), Defendants Douglas H. Wigdor and Wigdor LLP (together, the "Wigdor Defendants") file this Motion to Dismiss the Complaint filed by Plaintiff Ed Butowsky ("Compl.", *see* Dkt. No. 1) for lack of personal jurisdiction and for insufficient service of process.

### NATURE OF PROCEEDING

Butowsky filed this suit against the Wigdor Defendants in retaliation for their representation of co-defendant Rod Wheeler in a previous action filed in the United States Court for the Southern District of New York (the "*Wheeler* Action"). In that action, Wheeler, a Washington, D.C.-based private investigator, alleged that Butowsky, Fox News and others defamed him by publishing quotes misattributed to him in a since-retracted and disavowed news story which intimated that Democratic National Committee ("DNC") staffer Seth Rich, who was tragically murdered, was responsible for leaking DNC emails to WikiLeaks in the months leading up to the 2016 presidential election (and not Russian hackers). Mr. Wheeler alleged that Butowsky

used him as an unsuspecting pawn in a politically-motivated scheme aimed at deflecting attention away from the cloud of Russian interference in the 2016 presidential election.  Mr. Wheeler alleged that Butowsky, after gaining the trust of Mr. Rich's vulnerable parents, enlisted Mr. Wheeler to conduct an "investigation" into Mr. Rich's murder that was sanctioned by the Riches, the results of which Butowsky manipulated to manufacture "evidence" supporting the fringe conspiracy theory tying Mr. Rich's murder to the DNC email leak.  Mr. Wheeler alleged that Butowsky then worked with a Fox News reporter to publish a since-retracted news story which used Mr. Wheeler as a source, and employed a series of quotes misattributed to Mr. Wheeler about Mr. Rich's supposed links to WikiLeaks.

As discussed more fully below, this lawsuit is the latest in a string of litigation initiated by Butowsky in which *he* of all people claims to be the real victim of Fox News's discredited news coverage concerning Mr. Rich's tragic murder and ensuing litigations over that coverage.  Notably, just days after the *Wheeler* Action was dismissed, Butowsky openly admitted that he planned to (improperly) weaponize the court system to retaliate against the lawyers who represented his legal adversaries: "Anybody who did anything negative to me as a result of the lawsuit will pay. […] **I'm going to sue the hell out of a lot of firms.  I want to see these people choke on their nerves** and go through the same crap I had to go through."  Butowsky followed through on his word, and has sued no less than six law firms and nearly a dozen individual attorneys simply for representing individuals, including members of Seth Rich's family, in their efforts to hold Butowsky and other conspiracy theorists accountable.

The instant suit involves Butowsky's claims that, in speaking to national media about the claims and allegations in the *Wheeler* Action and Butowsky's alleged involvement with the now-debunked "investigation" into Mr. Rich's murder, the Wigdor Defendants made knowingly false

representations that damaged Butowsky in his personal and business capacities, and that they engaged in a civil conspiracy and violated civil RICO statutes.  Unfortunately for Butowsky, none of these allegations hold any merit, and, most important for purposes of the instant motion, none of these allegations have anything to do with Texas or support a finding that this Court can exercise personal jurisdiction over the Wigdor Defendants.

Butowsky's Complaint should be dismissed in its entirety as against the Wigdor Defendants for the plain and simple reason that this Court lacks personal jurisdiction over them. Mr. Wigdor and Wigdor LLP are out-of-state defendants.  Consistent with the due process protections afforded by the Fourteenth Amendment, such defendants can only be haled into a court of another state if they have certain minimum contacts with that state, and exercising jurisdiction over them will not offend traditional notions of fair play and substantial justice.  The Wigdor Defendants lack *any* of the necessary contacts with Texas to permit this Court to exercise personal jurisdiction over them.

In support of the clear conclusion that this Court lacks personal jurisdiction over the Wigdor Defendants, one need look no further than Butowsky's deficiently pled factual allegations within the four corners of his Complaint.  As Butowsky concedes in his Complaint, the only possible contact with Texas attributable to the Wigdor Defendants is the alleged harm Butowsky suffered in Texas by virtue of the Wigdor Defendants' allegedly defamatory statements made outside the state to out-of-state media.  Yet, under clear and controlling Supreme Court and Fifth Circuit precedent, such contacts are insufficient for the exercise of personal jurisdiction.  Requiring the Wigdor Defendants to defend this case in Texas would violate their due process rights.[1]

---

[1]     Lack of personal jurisdiction is just the most threshold, obvious and urgent reason why this case should be dismissed as to the Wigdor Defendants.  In the event the claims against them survive

3

this motion, the Wigdor Defendants intend to seek the dismissal of this case pursuant to Rule 12(c) and/or other applicable authorities on the following bases, each of which independently warrant dismissal: (i) Butowsky fully waived any and all rights he may have had to bring this action against the Wigdor Defendants by entering into a written agreement with Fox News, executed August 1, 2018.  This agreement, which will be submitted in connection with any such future motion to dismiss Butowsky's Complaint, specifically provides (in relevant part) that: "Butowsky … hereby covenants and represents that, to the fullest extent permitted by law, Butowsky … will not institute any complaints, claims, charges, actions, proceedings or lawsuits with any governmental agency or any court … against any of the parties in the Actions [defined to include the *Wheeler* Action] *or their respective attorneys* … that arise directly or indirectly out of, involve, or in any way relate to the Actions or the facts and circumstances leading up to the Actions …."  (emphasis added). The Wigdor Defendants, as Mr. Wheeler's attorneys, were unquestionably intended third party beneficiaries of Butowsky's waiver of claims.  Indeed, even Fox News (Butowsky's counterparty who gave Butowsky valuable consideration in exchange for Butowsky's promises) has advised Butowsky (in a written correspondence which we would also submit in connection with such future motion to dismiss) that, not only did it intend for the Wigdor Defendants to be third party beneficiaries, but that Butowsky's commencement of this action would be a material breach of their agreement; (ii) on the face of the Complaint, Butowsky's defamation, business disparagement, and civil conspiracy claims are barred by the applicable Texas statute of limitations; (iii) Butowsky's claims are barred by the doctrine of attorney immunity because, as pled, he is suing Mr. Wigdor and his law firm based on their work performed in the scope of their representation of a client; (iv) Butowsky's civil RICO claim fails because he fails to plead either an underlying predicate offense or an ongoing RICO enterprise apart from that (unpled) predicate act; (v) Butowsky fails to plead any of his claims with sufficient detail and particularity; (vi) Butowsky's Complaint should be dismissed pursuant to the doctrine of *forum non conveniens* because the aforementioned settlement agreement between Butowsky and Fox News (in which the Wigdor Defendants are third party beneficiaries) has New York choice of forum and choice of law provisions, and because the Southern District of New York would be a more convenient forum to hear this case; and (vii) Butowsky's claims are precluded pursuant to the doctrine of collateral estoppel and/or *res judicata* as the threshold issues underlying Butowsky's claims against the Wigdor Defendants – whether the Wigdor Defendants acted in bad faith with respect to their representation of Mr. Wheeler in his claims against Butowsky – were already decided *against* Butowsky in the *Wheeler* Action when the Honorable George B. Daniels denied Butowsky's Rule 11 motion for sanctions against the Wigdor Defendants (*see Wheeler v. Twenty-First Century Fox, et al.*, 322 F.Supp.3d 445, 457-59 (S.D.N.Y. 2018)).

We respectfully submit that, because the Court's manifest lack of personal jurisdiction over the Wigdor Defendants is so glaring, we did not wish to burden the Court by asserting these additional and alternative grounds for dismissal at this early juncture.  The Wigdor Defendants do, however, expressly reserve the right to later assert these and/or other grounds for the dismissal of Butowsky's Complaint, and file the instant motion without waiver of or prejudice to these and/or other additional arguments for dismissal.

4

Moreover, although he filed his Complaint on July 31, 2019, as of the date of this motion, Butowsky has failed to serve his Complaint on the Wigdor Defendants, nor has he even made any attempt to do so. More than 90 days since the filing of Butowsky's Complaint have passed, requiring dismissal of this action pursuant to Rule 12(b)(5) and Rule 4(m). Given the total, unexcused failure to serve the Complaint, as well as the complete lack of personal jurisdiction, Butowsky's Complaint against the Wigdor Defendants should be dismissed in its entirety.

## RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### I.    News Reports Concerning Seth Rich's Murder Give Rise to Litigation

The chain of events that gave rise to this action stem from Butowsky's devious attempts to pervert the tragic murder of DNC staffer Seth Rich for political gain, and certain since-retracted or otherwise disavowed Fox News reports that followed.[2] The Second Circuit Court of Appeals succinctly summarized those events in a recent opinion:

> On July 10, 2016, Seth Rich—a 27-year-old DNC staffer—was shot and killed a few hundred feet from his home in Washington, D.C. The Metropolitan Police Department determined, and continues to believe, that his unsolved murder stemmed from a botched robbery.
>
> Soon after Seth's death, a "conspiracy theory" emerged among "fringe" political groups. The theory was that "Seth had leaked thousands of DNC emails to WikiLeaks" and was murdered as a result. […] Seth's parents, the Riches, objected to this theory and issued a statement asking the public to "refrain from pushing unproven and harmful theories about Seth's murder." Despite this statement, the Appellees [*e.g.,* Fox News and its reporter Malia Zimmerman] in the case before us set out "to take the conspiracy theory from the fringe [and move it] to the front pages and screens of the mainstream media." […] To do this, they allegedly orchestrated a plan to turn the Riches into unwitting collaborators in their scheme. […]
>
> Specifically, in December 2016, Ed Butowsky, a guest commentator on Fox News, contacted Seth's parents, Joel and Mary Rich. […]

---

[2]     *See* http://web.archive.org/web/20170516133954/http://www.foxnews.com/politics/2017/05/16/slain-dnc-staffer-had-contact-with-wikileaks-investigator-says.html

Playing on the Riches' need to "get closure, as a family," Butowsky urged them to allow him to pay for [Rod] Wheeler's services [*e.g.,* investigative services]. […] Butowsky falsely assured the Riches that, "although he would finance Joel and Mary's retention of Wheeler, Butowsky would respect Wheeler's legal obligation not to speak to him [] or anyone other than Joel and Mary about the investigation." […] In the end, Joel and Mary were persuaded.

On May 10, in order to bring the untrue story to publication, Butowsky and Zimmerman called Wheeler "to falsely inform him that they had developed an FBI source supposedly confirming" that Seth had been in contact with WikiLeaks. […]

Soon after, Wheeler became the named source in the Fox News articles about Seth's murder. […]

On May 18, the Riches formally asked Fox to retract the story. […] Five days later, Fox retracted the story because "[t]he article was not initially subjected to [a] high degree of editorial scrutiny."

*See Rich v. Fox News Network, LLC*, 983 F.3d 112, 117-120 (2d Cir. 2019) (internal citations omitted).

In 2017, Wigdor LLP (a small litigation firm specializing in plaintiff's-side employment and sexual assault litigation) served as Wheeler's counsel in the civil action filed on his behalf against Fox News and Butowsky, among others, entitled *Wheeler v. Twenty-First Century Fox, et al.*, (S.D.N.Y. Case No. 17 Civ. 5807 (GBD)) (the aforementioned "*Wheeler* Action"). In connection with his representation of Mr. Wheeler, Mr. Wigdor made certain statements to the media about Butowsky's alleged actions in connection with the allegations set forth in the *Wheeler* Action.

Following Wigdor's withdrawal as counsel for Wheeler in the *Wheeler* Action (with leave of the court granted on May 30, 2018), Judge Daniels issued a Memorandum Decision & Order, dated August 2, 2018, dismissing Wheeler's claims and denying Butowsky's separate motion for Rule 11 sanctions. *See Wheeler*, 322 F.Supp.3d 445.

In 2018, Joel and Mary Rich (the parents of Seth Rich), by their counsel, Susman & Godfrey LLP, commenced a separate action in the Southern District of New York against Fox News and Butowsky, among others, entitled *Joel and Mary Rich v. Fox News Network, LLC, et al.*

18 Civ. 2223 (S.D.N.Y.) (the "*Rich* Action").  The *Rich* Action alleged that Butowsky, Fox News and others intentionally inflicted emotional distress on the Riches by publishing a story that implied that Seth Rich was responsible for leaking the DNC emails to WikiLeaks during the 2016 presidential election.  On the same day that the *Wheeler* Action was dismissed, Judge Daniels issued a separate order dismissing the *Rich* Action (*see Rich v. Fox News Network, LLC, et al.*, 322 F.Supp.3d 487 (S.D.N.Y. 487)) (although the Riches appealed and the Second Circuit Court of Appeals recently vacated the District Court's dismissal (*see Rich*, 939 F.3d 112)).

## II.    Butowsky Threatens Wrongful and Abusive Retaliatory Litigation

Just days after Judge Daniels's August 2, 2018 dismissal of the claims asserted in the *Wheeler* Action and the *Rich* Action, Investment News published an August 6, 2018 article quoting Butowsky as stating: "Anybody who did anything negative to me as a result of the lawsuit will pay. […]  **I'm going to sue the hell out of a lot of firms.  I want to see these people choke on their nerves** and go through the same crap I had to go through."[3]

Butowsky made good on his retaliatory threats to sue "the hell out of a lot of [law] firms" by initiating a broadscale legal attack on multiple law firms and other parties associated with them:

- On March 6, 2019, Butowsky filed a lawsuit against Susman & Godfrey (counsel for the Riches) in the 416th District Court in Collin County, Texas, entitled *Butowsky v. Susman & Godfrey, LLP*, No. 416-01222-2019, alleging, *inter alia*, defamation and malicious prosecution (the "*Susman* Action").[4]

- On March 12, 2019, Butowsky initiated a separate lawsuit entitled *Butowsky v. Gottlieb, et al.* (E.D. Tex. Case No. 19 Civ. 180) (the "*Gottlieb* Action"), alleging claims of, *inter*

---

[3]     *See* https://www.investmentnews.com/article/20180806/FREE/180809955/exonerated-in-defamation-suits-ed-butowsky-is-out-for-blood

[4]     The Susman Action was dismissed on June 21, 2019 by the Honorable Andrea S. Thompson, who found that under Texas' Anti-SLAPP statute, the Texas Citizens Participation Act, Butowsky failed to establish, by clear and specific evidence, a *prima facie* case for each essential element of his claims, and that Susman & Godfrey established by a preponderance of the evidence the defense of attorney immunity.

*alia*, defamation, business disparagement, malicious prosecution, and civil conspiracy. There, Butowsky sued no less than nine attorneys (including attorneys from Susman & Godfrey representing Seth Rich's parents), three different law firms (including counsel for Aaron Rich, Seth Rich's brother, Boies Schiller & Flexner LLP and Massey & Gail, LLP, as well as Bailey & Glasser LLP), Turner Broadcasting System, Inc. (*i.e.*, CNN), television personality Anderson Cooper, the New York Times, and Vox Media.  Motions to dismiss filed by all defendants in that action are *sub judice*.

- On August 1, 2019, Butowsky initiated another lawsuit, filed as a related action to the *Gottlieb* Action, entitled *Butowsky v. Democratic National Committee, et al.* (E.D. Tex. Case No. 19 Civ. 582 (the "*DNC* Action").  Therein, Butowsky asserts claims against Perkins Coie LLP, the Democratic National Committee, and an internet security company called CrowdStrike, Inc., alleging, *inter alia*, defamation, business disparagement, malicious prosecution, and civil conspiracy, including an alleged conspiracy with the attorneys and law firms named in the *Susman* Action and *Gottlieb* Action to defame him. *See id.*, Complaint ¶¶10-21, ECF No. 1 (August 1, 2019).[5]

## III.    The Instant Lawsuit

Consistent with his campaign of aggressive, retaliatory litigation outlined above, and notwithstanding the fact that Wigdor, as discussed in more detail herein, has absolutely no contacts with Texas, on July 31, 2019, Butowsky filed the present lawsuit against Mr. Wigdor, Wigdor LLP, and Mr. Wheeler, alleging claims of defamation (Count I), business disparagement (Count II), civil conspiracy (Count III), and civil RICO violations (Count IV).  Butowsky's claims all arise from allegations that certain statements and representations to the national media made by Mr. Wigdor, the Wigdor law firm, and/or Wheeler related to the *Wheeler* Action were knowingly false and caused Butowsky damage in his home state of Texas.

---

[5]      In addition, on June 21, 2018, Butowsky filed a suit against David Folkenflik, NPR, Inc. and others, entitled *Butowsky v. Folkenflik, et al.*, No. 18 Civ. 0442 (E.D.Tex.) (the "*Folkenflik* Action"). In that suit, Butowsky brings claims of defamation, business disparagement, and civil conspiracy.  The *Folkenflik* Action is in the discovery stage.

Further, on August 3, 2018, Butowsky and his investment company, Chapwood Capital Investment Management, LLC, filed a lawsuit against Charles Schwab Corporation and others entitled *Butowsky v. Charles Schwab Co., et al.*, No. 18 Civ. 0548 (E.D.Tex.) (the "Charles Schwab Action").  Butowsky alleges claims of defamation, business disparagement, tortious interference and breach of contract.  This litigation was compelled to arbitration in March 2019.

The Wigdor Defendants now move to dismiss Butowsky's complaint in its entirety for Butowsky's failure to complete service of process as well as this Court's lack of personal jurisdiction.

## APPLICABLE LEGAL STANDARD

Rule 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. "After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists." *Lahman v. Nationwide Provider Sols.*, No. 17 Civ. 00305 (ALM), 2018 WL 3035916, at *4 (E.D. Tex. June 19, 2018) (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). "In resolving a jurisdictional issue, the court may review pleadings, affidavits, interrogatories, depositions, oral testimony, exhibits, any part of the record, and any combination thereof." *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *Command-Aire Corp. v. Ontario Mech. Sales & Serv.*, Inc., 963 F.2d 90, 95 (5th Cir. 1992)). A district court, however, is not required to "credit conclusory allegations" regarding personal jurisdiction, "even if uncontroverted." *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

Furthermore, Rule 4(m) requires a plaintiff to serve the summons and complaint on a defendant within 90 days of filing, and if service is not made within 90 days, "the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *See* Rule 4(m).  To that end, Rule 12(b)(5) allows a defendant to move to dismiss a complaint for insufficient service of process.  *See Thomas v. New Leaders for New Sch.*, 278 F.R.D. 347, 349-50 (E.D. La. 2011) ("Federal Rule of Civil Procedure 12(b)(5) provides for dismissal of a claim if service of process ... was not properly

served in the appropriate manner."); *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981) ("In the absence of valid service of process, proceedings against a party are void."). "When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity." *Id.*  Notably, "[a] district court has broad discretion to dismiss an action pursuant to Rule 12(b)(5) for insufficient service of process." *Perez v. City of New Orleans*, 173 F.Supp.3d 337, 345 (E.D. La. 2016).

**ARGUMENTS AND AUTHORITIES**

**I.    Butowsky's Complaint Should be Dismissed for Failure to Complete Service Within 90 days of Filing**

A Court is authorized, under Rule 12(b)(5), to dismiss a complaint based on a plaintiff's insufficient service of process pursuant to Rule 4.[6]  *See* Rule 12(b)(5).  In pertinent part, Rule 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Rule 4(m).  Accordingly, under Rule 4(m), the Court must first determine whether "good cause" exists to extend the time for service.  *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996).  "If 'good cause' does not exist, the Court may, in its discretion, decide whether to dismiss the case without prejudice or extend time for service." *Id.*

When service is challenged, the party responsible for effectuating service bears the burden of establishing that good cause exists for her failure to serve process properly.  *Sys. Signs Supplies*

---

[6]     Rule 12(b)(5) is the proper method to challenge the "lack of delivery of the summons and complaint."  5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1353 (3d ed. 2004).

*v. Dep't of Justice*, 903 F.2d 1011, 1013 (5th Cir. 1990); *see also, Jacob v. Barriere Constr. Co., LLC*, 08 Civ. 3795 (EEF), 2009 WL 2390869, at *3 (E.D. La. July 30, 2009).  "Good cause" requires "at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does <u>not</u> suffice." *Gartin v. Par Pharm. Cos., Inc.*, 289 F. App'x. 688, 692 (5th Cir. 2008) (quoting *Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1995)) (emphasis added).  As such, establishing good cause typically involves some evidence of "good faith on the part of the party seeking an enlargement of time and some reasonable basis for noncompliance within the time specified." *Lambert*, 44 F.3d at 299.  To determine whether "good cause" exists, the Court looks at the actions of the plaintiff that took place within the requisite period of time.  *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985).

This Court should dismiss the claims against the Wigdor Defendants because no good cause exists to excuse Butowsky's failure to serve them within Rule 4(m)'s 90-day period.  When a plaintiff does not serve a defendant within the required time period – as the case here – a court is required to dismiss the case unless the plaintiff shows good cause for her failure.  Rule 4(m).  Fifth Circuit precedent is clear: good cause is more than inadvertence, mistake of counsel, or <u>ignorance of the rules</u>.  *Sys. Sings Supplies*, 903 F.2d at 1013; *see also, Winters,* 776 F.2d at 1306.  Instead, Butowsky must demonstrate excusable neglect, as well as good faith and a reasonable basis for not serving the summons and complaint within the time allowed by the Federal Rules of Civil Procedure.  *Sys. Sings Supplies*, 903 F.2d at 1013.  *See also, Newby v. Enron Corp.,* 284 F. App'x 146, 150 (5th Cir. 2008) (holding that unfamiliarity with the rules falls short of the excusable neglect threshold).

Here, Butowsky cannot satisfy his burden of proving good cause.  Butowsky cannot claim ignorance or a misunderstanding of the proper service requirements because service has been effected upon various defendants in Butowsky's litany of other lawsuits (some filed in this Court). *See Furr v. City of Baker*, No. 15 Civ. 0426 (JWD), 2017 WL 3496497, at \*10 (M.D. La. Aug. 15, 2017) (refusing to allow the plaintiff – who was initially proceeding *pro se* – to claim ignorance or misunderstanding of the law with respect to service for other defendants when several other defendants had been properly served).[7]  Rule 4 specifically sets forth the time frame for service upon the Wigdor Defendants; that time frame has passed.  Butowsky has not even requested that a summons be issued for either defendant.  Because no good cause exists to justify Butowsky's failure, this Court should dismiss the Wigdor Defendants.

## II.    Butowsky's Complaint Should be Dismissed in its Entirety Because This Court Lacks Personal Jurisdiction Over the Wigdor Defendants

"The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "To comport with due process, the defendant's conduct in connection with the forum state must be such that he 'should

---

[7]     Butowsky was even able to serve Wigdor LLP with a subpoena for documents in connection with the *Folkenflik* Action.  *See Butowsky v. Folkenflik*, No. 10-mc-00446 (PKC) (S.D.N.Y.) at Dkt. No. 3, Wigdor LLP's Memorandum of Law in Support of Motion to Quash Ed Butowksy's Document Subpoena, at 16 (acknowledging service of subpoena made on Wigdor LLP by Butowsky in or around July 2019).

reasonably anticipate being haled into court' in the forum state." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

"Sufficient minimum contacts will give rise to either specific or general jurisdiction." *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002). "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *BNSF Ry. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (alteration omitted) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)). "The 'paradigm' forums in which a corporate defendant is 'at home,'" the Supreme Court has explained "are the corporation's place of incorporation and its principal place of business." *Id.* As the Fifth Circuit has emphasized, "[t]he continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Bowles v. Ranger Land Sys.*, 527 F. App'x 319, 321 (5th Cir. 2013) (alteration original) (quoting *Submersible Systems, Inc. v. Perforada Central, S.A. de C.V.*, 249 F.3d 413, 419 (5th Cir. 2001)).

"Specific jurisdiction arises when the defendant's contacts with the forum 'arise from, or are directly related to, the cause of action.'" *Revell*, 317 F.3d at 470 (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001)). In order for specific jurisdiction to be present, the defendant must have "'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *See Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Ultimately, for minimum contacts to support specific jurisdiction, "[i]t is essential that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Id.* at 379

13

(citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (citing *Burger King*, 471 U.S. at 472).

### A.   Butowsky Fails to Allege Facts Sufficient to Establish General Personal Jurisdiction Over the Wigdor Defendants

Butowsky's Complaint fails to allege facts sufficient to support general personal jurisdiction over either Mr. Wigdor or Wigdor LLP.  His allegations largely center on allegedly defamatory statements made by the Wigdor Defendants outside the State of Texas – made to another resident of New York no less – that purportedly found their way to Texas through national publication and re-publication, as distinct from being directed to Texas media outlets.[8]  Nowhere in his Complaint, however, does Butowsky claim that Mr. Wigdor or Wigdor LLP entered Texas, contacted residents of Texas, or conducted any activities whatsoever in or directed towards the state.  Butowsky fails to allege a meaningful (or any) affiliation on the part of either Mr. Wigdor or Wigdor LLP with the State of Texas — let alone the type of "continuous and systematic" affiliations required to support general jurisdiction.  *See BNSF*, 137 S. Ct. at 1558.  In short, nothing in Butowsky's Complaint supports or even comes close to supporting the notion that Mr.

---

[8]   Generally speaking, Butowsky's allegations are high on hyperbole, but short on facts. However, he does state that, "[i]n July 2017 … Wigdor leaked false statements to National Public Radio ("NPR")."  Compl. at ¶ 134.  Butowsky goes on to aver that, "[b]etween July 24, 2017 and July 31, 2017, Wigdor leaked and published his unprivileged draft complaint and discussed its false statements with David Folkenflik."  *Id.* at ¶ 135.  Then, on August 1, 2017, Folkenflik published an article on NPR.org that allegedly republished the Wigdor Defendants' statements. *Id.* at ¶ 136.  Butowsky readily admits that "Folkenflik, is a citizen of New York, who lives in New York City."  *Id.* at ¶ 4.

Wigdor or Wigdor LLP would be "essentially at home" in the State of Texas.  *See id.*; *Bowles*, 527 F. App'x  at 321.[9]

Nor could Butowsky even establish that this Court has general personal jurisdiction over the Wigdor Defendants.  As outlined in Mr. Wigdor's and Wigdor LLP's declarations in support of this motion, neither Wigdor defendant has had *any* meaningful contacts with the State of Texas. Mr. Wigdor is a resident of New York and has never set foot in, let alone resided in Texas. *See* Ex. A at ¶¶ 2, 5–7 ("Wigdor Declaration").  He owns no property interest in Texas, pays no taxes in Texas, and maintains no phone or mail contact there.  *Id.* at ¶¶ 8–11.  His law firm has no office in Texas; he holds no professional licenses or credentials issued by the State of Texas; and has never sought admission to or been admitted *pro hac vice* in any Texas State or Federal Court.  *Id.* at ¶¶ 4, 14, 17.  To the best of his knowledge, Mr. Wigdor has never granted an interview to a Texas-based newspaper, television station, radio station, or any other media outlet exclusively serving Texas.  *Id.* at ¶ 16.  Finally, in addition to having never traveled to Texas for any purpose, Mr. Wigdor has never participated in any meetings, hearings, witness interviews, or depositions in Texas via video conference, Skype, or any similar "virtual presence" technology.  *Id.* at ¶ 15.

His firm, Wigdor LLP, likewise has no meaningful contacts with the State of Texas. Wigdor LLP is a New York-based law firm that does not and never has had any office, operations, property-interest, attorneys, or staff located or residing in the State of Texas.  *See* Ex. B at ¶¶ 3–6 ("Wigdor LLP Declaration").  It does not maintain a phone number in Texas, pay taxes there, or receive revenue from sources in the state.  *Id.* at ¶¶ 7–9.  None of Wigdor LLP's attorneys are admitted to the Texas State Bar or any of the Federal District Courts located in the state, and none

---

[9]     It appears from his Complaint that Butowsky is already conceding that the Court lacks general personal jurisdiction over the Wigdor Defendants. *See* Compl. at ¶19 (alleging only that "Defendants are subject to specific personal jurisdiction in Texas").

of Wigdor LLP's attorneys have ever been admitted *pro hac vice* to any court in Texas, state or federal. *Id.* at ¶¶ 10–12. Nor has Wigdor LLP ever filed pleadings in a Texas court. *Id.* at ¶ 13. Finally, Wigdor LLP does not direct any marketing or business development efforts specifically towards the State of Texas; has never purchased advertising from any newspapers, TV stations, radio stations, or other media outlets based in Texas; and has never sought coverage from any media outlets that exclusively serve the State of Texas. *Id.* at ¶¶ 14–15.

Given this state of affairs, Butowsky cannot meet the "difficult" "continuous and systematic contacts test" because Mr. Wigdor and Wigdor LLP have no meaningful—let alone "extensive contacts"—with the forum. *See Bowles*, 527 F. App'x at 321; *Sangha v. Navig8 Ship Management Private Ltd.*, 882 F.3d, 96, 101-02 (5th Cir. 2018); *see also Companion Prop. & Cas. Ins. Co. v. Palermo*, 723 F.3d 557, 559-60 (5th Cir. 2013) ("The general-personal-jurisdiction theory has no substance under these facts. Defendants maintained no offices in Texas; they had no personnel stationed there; they paid no Texas taxes and had no registered agent for service of process; and, although sustained over an appreciable period, transacted only limited and discrete businesses there."); *Gray, Ritter & Graham PC v. Goldman Phipps PLLC*, 511 S.W.3d 639, 657 (Tex. App.–Corpus Christi 2015, pet. denied) ("[A] nonresident attorney who has only sporadic contacts with Texas will not be subject to general jurisdiction in Texas.").

## B.     Butowsky Fails to Allege Facts Sufficient to Establish Specific Personal Jurisdiction Over Mr. Wigdor or Wigdor LLP

Butowsky's Complaint also fails to establish specific personal jurisdiction over the Wigdor Defendants. As noted above, the only connection Butowsky draws between the defendants in this case and the State of Texas are the alleged harms *he* suffered in Texas by virtue of allegedly defamatory statements made by the Wigdor Defendants out of state, to an out of state third party (Folkenflik), that third party Folkenflik allegedly published in a national news publication. Under

controlling Fifth Circuit precedent, these allegations are insufficient to support specific personal jurisdiction.

"To support personal jurisdiction against [a] defaming defendant," the Fifth Circuit has emphasized the requirement that "the forum 'be the focal point of the story.'" *Clemens*, 615 F.3d at 379 (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)).  It is not enough merely that a plaintiff suffer emotional distress and damage to his professional reputation in his home state.  *See id.* Rather, the defamatory statements must be adequately directed at the forum state to satisfy minimum contacts sufficient to support the exercise of specific personal jurisdiction there.  *See id.*; *see also Revell*, 317 F.3d at 475 (finding no jurisdiction where allegedly defamatory internet post was "presumably directed at the entire world, or perhaps just concerned U.S. citizens," "[b]ut certainly . . . was not directed specifically at Texas").

For example, in, *Clemens*, baseball player Roger Clemens sued a former trainer, Brian McNamee, for defamation in a Texas court.  *See* 615 F.3d at 377.  McNamee had cooperated with a federal investigation that led to a published report, including statements by McNamee regarding Clemens's use of performance-enhancing drugs.  *Id.*  Subsequently, "[e]very national news service, as well as every major newspaper in Texas, republished McNamee's statements." *Id.* McNamee also spoke with a senior writer for the internet site SI.com (the online version of *Sports Illustrated*) who published a story containing McNamee's statements repeated from the published federal report.  *Id.*

McNamee argued that, as an out-of-state defendant, the court lacked jurisdiction over him. The Fifth Circuit agreed.  In support of jurisdiction, Clemens highlighted the harm he suffered in Texas and McNamee's knowledge of the likelihood of such harm in that forum.  *Id.* at 380.  These allegations, however, were insufficient to support personal jurisdiction.  *Id.*  The Fifth Circuit

interpreted the Supreme Court defamation case *Calder*, 465 U.S. 783, "as requiring the plaintiff seeking to assert specific personal jurisdiction over a defendant in a defamation case to show '(1) the subject matter of and (2) the sources relied upon for the article were in the forum state.'" *Id.* (quoting *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 426 (5th Cir. 2005)).  The question, therefore, was "whether McNamee's allegedly defamatory statements were aimed at or directed to Texas."  *Id.*  Because McNamee's statements concerned the delivery of performance enhancing drugs to Clemens in New York and Canada, they were not made in or directed at residents of Texas to adequately support personal jurisdiction over McNamee.[10] *Id.*

Revell* is likewise instructive.  In that case, Revell, a resident of Texas, brought a cause of action in the Northern District of Texas against Lidov, a Massachusetts resident, as well as the Board of Trustees of Columbia University, whose principal offices were in New York City.  *See* 317 F.3d at 469.  Specifically, Revell alleged that an article Lidov wrote and published on a website maintained by Columbia's School of Journalism defamed Revell and caused him personal and professional damages in Texas.  *Id.*  As in *Clemens*, the Fifth Circuit found that the Texas-based federal court lacked personal jurisdiction over the defendants.

As the Fifth Circuit there noted "the article written by Lidov about Revell contains no reference to Texas, nor does it refer to the Texas activities of Revell, and it was not directed at Texas readers as distinguished from readers in other states.  Texas was not the focal point of the article or the harm suffered . . . ." *Id.* at 473.  As the Fifth Circuit had concluded regarding other

---

[10]     Likewise, the Wigdor Defendants' allegedly defamatory statements were made by New York citizens, to a New York citizen, regarding the investigation of a crime committed in Washington, D.C.  Notably, Butowsky readily admits throughout his Complaint that he voluntarily and actively involved himself in that investigation.

intentional tort cases, "the plaintiff's residence in the forum, and suffering of harm there," would "not alone support jurisdiction under *Calder*."[11]  *Id.* (collecting cases).  In the end, Lidov's article made "no reference to Texas . . . or any reliance on Texas sources." *Id.* "These facts," the court concluded, "weigh[ed] heavily against finding the requisite minimum contacts in [that] case." *Id.* "In short," the court concluded, "this was not about Texas." *Id.* at 476.

Given this controlling precedent, it is clear that Butowsky has not offered a single factual allegation on which this Court plausibly could conclude that the Wigdor Defendants' allegedly defamatory statements and other purported torts were "meaningfully directed" at Texas or that

---

[11]      We suspect that Butowsky may, as he has in opposing other motions to dismiss based on lack of personal jurisdiction filed by out-of-state lawyers he has sued, argue that *Calder* supports his position because the Supreme Court held there that a national publication based in Florida could be subject to a California court's jurisdiction for allegedly defaming a California resident. *See, e.g., Gottlieb*, No. 19 Civ. 180, ECF No. 83, Butowsky's Opposition to Defendants' Motion to Dismiss, at 3-5  (E.D. Tex. July 22, 2019).  However, for a host of reasons, *Calder* would not support a finding that this Court has personal jurisdiction over the Wigdor Defendants because: (i) the California resident plaintiff in *Calder* was suing a national publication that had published alleged defamatory statements, and not attorneys who had spoken to the media in connection with their representation of litigants in a different state; (ii) the national publication at issue, *National Enquirer*, in fact had "a large circulation in California," *i.e.*, "600,000 [] copies," "almost twice the level of the next highest state." (*Calder*, 465 U.S. at 784-85); (iii) at least one defendant was a reporter who frequently traveled to California and relied on phone calls to sources in California for the information in the purported defamatory article; and (iv) "[t]he allegedly libelous story concerned the *California* activities of a California resident," and as such, "California [was] the focal point both of the story and of the harm suffered." (*id.* at 788-89 (emphasis added)).  In contrast, the activities upon which the *Wheeler* Action (and therefore the Wigdor Defendants' statements in connection therewith) occurred in Washington D.C. and New York – not in Texas.

Moreover, the Supreme Court significantly narrowed the "effects" test set forth in *Calder* in its 2014 decision in *Walden v. Fiore*, 571 U.S. 277, 287-88 (2014), which made it clear that the fact that the plaintiff felt the effect of the alleged defamation in his state of residence was not sufficient to establish jurisdiction under the Due Process Clause.  Rather, the "effects" that are relevant for analyzing a court's jurisdiction over a non-resident defendant are only those that the non-resident defendant intentionally directed at the state itself.  *Walden*, 571 U.S. at 284 ("[f]or a State to exercise jurisdiction consistent with due process," the "relationship among the defendant, the forum and the litigation" "must arise out of contacts that the 'defendant *himself* creates with the forum State.") (emphasis in original) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984).

Texas was the "clear focus" or "clear thrust" of the statements.  *Fielder*, 415 F.3d at 428; *see also Clemens*, 615 F.3d at 380.  Butowsky dedicates pages upon pages of his complaint to the publication and republication of allegedly defamatory statements in the national media.  *See*, *e.g.*, Compl. at ¶¶ 130–189.  Yet, none of these allegations contain any evidence that Mr. Wigdor or Wigdor LLP in any way targeted Texas through their allegedly defamatory statements.  There is no allegation, plausible or otherwise, that the Wigdor Defendants ever mentioned or referenced Texas, ever in any way directed their statements to Texas residents, or in the course of representing Mr. Wheeler in the *Wheeler* Action, ever took any actions to advance that case in, or direct it to Texas.  *Fielding*, 415 F.3d at 426.  Rather, Butowsky appears to concede that the statements at issue in this case were directed to the public in general, not at Texas specifically.  This, however, is precisely the kind of scattershot national publication that has been found to be insufficiently targeted to establish personal jurisdiction.  *See Revell*, 317 F.3d at 475 (finding no jurisdiction where allegedly defamatory internet post was "presumably directed at the entire world, or perhaps just concerned U.S. citizens," "[b]ut certainly . . . was not directed specifically at Texas").  Moreover, Butowsky does not allege (nor can he credibly) that any of the statements at issue drew on sources from Texas, another factor courts have found relevant in establishing personal jurisdiction.  *Clemens*, 615 F.3d at 380.  In short, nothing in Butowsky's complaint shows that the allegedly defamatory statements were "about Texas" (*see Revell*, 317 F.3d at 476), and thus he has failed to allege facts sufficient to support specific personal jurisdiction in Texas.

Instead, Butowsky merely posits the same types of inadequate, conclusory factual allegations that the Fifth Circuit has expressly and repeatedly rejected as bases for jurisdiction in *Clemens* and *Revell*.  For example, Butowsky alleges that Mr. "Wigdor knew Butowsky lived and worked in Texas," that Butowsky "managed a registered investment advisor in Texas," and that

Mr. Wigdor knew that his allegedly defamatory statements would "injure Butowsky's business and personal interests in Texas." Compl at. ¶ 12.  Such allegations are simply inadequate to establish minimum contacts consistent with due-process requirements.  *See Clemens*, 615 F.3d at 370.  Injury in the forum state alone, even if the alleged defamer could have foreseen it, is inadequate to support specific jurisdiction.  *See Herman v. Cataphora, Inc.*, 730 F.3d 460, 465 (5th Cir. 2013) ("A plaintiff's suffering damage in the forum state is part of the calculus, but for minimum contacts to be present the allegedly defamatory statements must be adequately directed at the forum state.").

Even the lone Texas case Butowsky cites in the jurisdictional section of his complaint, *TV Azteca v. Ruiz*, 490 S.W.3d 29 (Tex. 2016), belies the contention that this Court has personal jurisdiction over the Wigdor Defendants.  *Azteca* involved a defamation claim brought by a Texas resident against Mexican citizens who broadcast television programs in Mexico that also reached parts of Texas.  *Id.* at 34.  The Mexican citizens (the "Petitioners" in the Texas Supreme Court) argued that the Texas court lacked jurisdiction over them.  The Texas Supreme Court ultimately held that "allegations and evidence that Petitioners harmed Texas residents in Texas, Petitioners' broadcasts were viewable in Texas, and Petitioners knew Texans could watch the programs in Texas [were] insufficient to establish that Petitioners purposefully availed themselves of the benefits of conducting activities in Texas." *Id.*

It was only when the forgoing was taken together with "evidence that Petitioners e*xploited the Texas market to capitalize on the broadcasts that traveled into Texas*," did the Texas Supreme Court conclude that there was purposeful availment sufficient to exercise jurisdiction over the Petitioners.  *Id.* (emphasis added).  This included evidence that the Petitioners actually *entered Texas* to produce and promote their broadcasts, derived substantial revenue due to advertising *in*

*Texas*, and "made substantial and successful efforts to distribute their programs and increase their popularity *in Texas*." *Id.* at 49–50 (emphases added).  It was *these* activities, the Texas Supreme Court concluded, that supported a finding that the Petitioners purposefully availed themselves of the benefits of conducting activities in Texas and, therefore, subjected themselves to jurisdiction to Texas's courts.  *Id.* at 52.

Ironically, rather than support Butowsky's jurisdictional claims in this case, *Azteca* reveals the glaring inadequacy of the facts he has pled.  At best, Butowsky alleges (baldly) that the Wigdor Defendants' statements reached Texas and that the Wigdor Defendants could have foreseen that result.  Under *Azteca*, like the other controlling Fifth Circuit precedent detailed above, this is simply not enough to support personal jurisdiction.

Finally, outside the rambling allegations in his Complaint, Butowsky parrots the requirements and standards for establishing personal jurisdiction set by the Supreme Court, and, in summary fashion, alleges that Defendants:

> committed multiple acts of defamation and intentional torts, in whole or part, *in Texas*.  They have minimum contacts with Texas such that the exercise of personal jurisdiction over them comports with traditional notions of fair play and substantial justice and is consistent with the Due Process clause of the United States Constitution.  Defendants' defamation was *purposefully directed at Texas* and was continuous and systematic.  Butowsky's claims directly arise from and relate to Defendants' publication of false and defamatory statements *in Texas*.

Compl. at  ¶19 (emphases added).  Butowsky provides no factual support (plausible or otherwise) for these conclusory jurisdictional allegations.  He nowhere explains what alleged acts were committed "in Texas," or in what manner the Wigdor Defendants' allegedly defamatory statements were directed "at Texas" or published "in Texas." It is beyond cavil that such conclusory allegations concerning personal jurisdiction are to be disregarded even if uncontroverted.  *See, e.g.*, *Sealed Appellant 1 v. Sealed Appellee 2,* 625 Fed. Appx. 628, 631 (5th Cir. 2015); *Panda Brandywine Corp,* 253 F.3d at 868–69 (5th Cir. 2001) ("Appellants' sole evidence is their state

court petition, which alleges 'on information and belief' that Appellee knew Appellants are Texas residents and knew its actions would intentionally cause harm to Appellants in Texas.  Appellants present no other evidence of Appellee's contacts with Texas relating to Appellants' claims, and thus the district court properly concluded that the allegations are merely conclusory.").[12] Otherwise, accepting such a theory of personal jurisdiction "would turn the jurisdictional analysis on its head, focusing attention not on where the alleged tortfeasor directed its activity, but on where the victim could identify tangential harms." *Fielding*, 415 F.3d at 427.  Moreover, the declarations submitted by the Wigdor Defendants directly contradict Butowsky's baseless statements in his Complaint, even if those allegations were to be credited (which they should not).[13]  Not only has

---

[12]     Butowsky should be warned against causing further delay and disruption through the filing of an amended complaint purportedly to address these jurisdictional deficiencies unless such amendment will actually include plausible factual allegations that support this Court's personal jurisdiction over the Wigdor Defendants.  Butowsky's *modus operandi* in other actions in which out-of-state attorneys he has sued have challenged this Court's personal jurisdiction over them has been to file a completely fruitless amended complaint that does nothing to address these glaring deficiencies.  For instance, after the Boies Schiller law firm moved to dismiss Butowsky's complaint pursuant to Rule 12(b)(2), Butowsky filed an amended complaint that simply added insufficient, conclusory language regarding personal jurisdiction, such as by alleging that "the Court has personal jurisdiction over all Defendants because they participated in intentional torts that were designed to hurt the Plaintiff in Texas.  All of the Defendants knew that the Plaintiff was a resident of Texas when they targeted him."  *See Gottlieb*, No. 19 Civ. 180, ECF No. 62, First Amended Complaint at ¶ 10 (E.D. Tex. July 15, 2019).  Such belatedly added and conclusory statements, not supported by plausible factual allegations, will be insufficient to give rise to specific jurisdiction, and will serve no legitimate purpose but to delay the inevitable dismissal of this case on Rule 12(b)(2) grounds, while further needlessly draining the Wigdor Defendants' and the Court's resources.

[13]     We also anticipate that Butowsky, in an attempt to unnecessarily drag this case out and cause the Wigdor Defendants to incur further legal expense and harassment, will seek leave to conduct limited discovery for the purposes of establishing personal jurisdiction.  The Court should not entertain such a request.  Butowsky's entire jurisdictional argument is based on the uncontested fact that he lives in Texas.  As discussed above, based on clear Supreme Court and Fifth Circuit authority, and the clear absence of jurisdictional contacts with Texas based on the Wigdor Defendants' affidavits, discovery should not be permitted because the "lack of personal jurisdiction is clear."  *Monkey Boy Graphix, Inc. v. Anton Sport, Inc.*, Civil Action No. 08 Civ. 0

Mr. Wigdor never set foot in Texas, but he has never directed communications to Texas via Texas-based media or any other mechanism.

*        *        *

Despite waiting almost one year to file the instant action after publicly stating that he intended to "sue the hell out of" Mr. Wigdor and Wigdor LLP in order to see them choke on their nerves" for representing Rod Wheeler, Butowsky has woefully failed to allege any substantial— let alone continuous and systematic—contacts between the Wigdor Defendants and the State of Texas sufficient to support general personal jurisdiction there.[14]  Nor are the facts that Butowsky has alleged – *i.e.*, that he suffered damages in Texas based on statements made outside of Texas to a non-Texas (New York) citizen, published by national media – sufficient to establish contact between Texas and the alleged underlying misconduct to establish specific personal jurisdiction. Were these deficiencies in the Complaint not apparent enough, the Wigdor Defendants have submitted declarations affirming that they have not made contact with the State of Texas in any meaningful way, much less in a manner that would subject them to suit in Texas consistent with

---

657 (BH)(ICR), 2008 WL 11349966, at *7-8 (N.D. Tex. Aug. 20, 2008) (denying jurisdictional discovery when plaintiff failed to state facts sought and how facts would support personal jurisdiction).

[14]     Butowsky's track record in New York reveals his true motive for filing in Texas.  In *Wheeler*, Butowsky attacked the Wigdor Defendants seeking sanctions and attorney's fees.  322 F. Supp. 3d at 457-58.  Judge Daniels outrightly rejected any wrongdoing by the Wigdor Defendants—awarded no fees, costs or reprimand of any kind—and noted in reference to Butowsky's complaints that "the situation in which all of these parties find themselves hardly engenders sympathy."  *Id.* at 458-59.  Butowsky's attorney, Ty Clevenger, fared no better in the Southern District of New York.  Just last year, the Honorable William H. Pauley of the S.D.N.Y rejected Mr. Clevenger's *pro hac vice* application to appear as counsel in an employment discrimination matter noting that "Clevenger has amassed a cavalcade of disciplinary issues in various courts, all of which display a lack of respect for the judicial process."  *Hughes v. Twenty-First Century Fox, Inc., et. al.,* No. 17 Civ. 07093 (WHP), Dkt. No. 87 (S.D.N.Y June 25, 2018). Knowing the well was likely dry in New York, Butowsky decided to bring his revenge campaign to Texas, despite there being no basis to do so in this forum.

24

the due process requirements of the Fourteenth Amendment.  Therefore, because the Court lacks personal jurisdiction over Mr. Wigdor and Wigdor LLP, Butowsky's complaint should be dismissed as against them in its entirety.

## CONCLUSION AND PRAYER

For each of the foregoing reasons, the Wigdor Defendants pray the court grant this Motion and Dismiss the claims against them in their entirety.  The Wigdor Defendants further request the court award such other relief, in law or in equity, to which they may be justly entitled.

DATE: November 4, 2019     Respectfully submitted,

**DYKEMA GOSSETT, PLLC**

*/s/ Adam Nunnallee*
Christopher D. Kratovil
State Bar No. 24027427
ckratovil@dykema.com
Adam Nunnallee
State Bar No. 24057453
anunnallee@dykema.com
1717 Main Street, Suite 4200
Dallas, Texas 75201
(214) 462-6400
(214) 462-6401 (fax)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon on all counsel of record on November 4, 2019, in compliance with the Federal Rules of Civil Procedure.

*/s/ Adam Nunnallee*
Adam Nunnallee

25

# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
Sherman Division

ED BUTOWSKY,

       Plaintiff,

  v.

DOUGLAS H. WIGDOR, WIGDOR LLP,
ROD WHEELER,

       Defendants.

Case No.:    4:19-cv-00577

## <u>DECLARATION OF DOUGLAS H. WIGDOR</u>

I, Douglas Wigdor, hereby declare as follows:

    1.    My name is Douglas H. Wigdor.  I am over eighteen years of age and am fully competent and authorized in all respects to execute this affidavit.  I have personal knowledge of the facts hereinafter stated, which are true and correct, and if called as a witness, would testify competently thereto.

    2.    I am a resident of the State of New York.

    3.    I am a founding partner of and practicing attorney at Wigdor LLP, a New York limited liability partnership, organized under the laws of New York.  I am duly licensed to practice law in New York, and my practice is based in New York.

    4.    My law firm does not maintain an office or any other presence in the State of Texas.

    5.    I have never resided in or visited the State of Texas.

    6.    I have never traveled to or through the State of Texas for any business purpose.

7.     I have never traveled to or through the State of Texas for any leisure or personal purpose.  Indeed, I have never even had a brief layover at an airport in Texas, such as DFW International Airport or Intercontinental Airport in Houston.

8.     I neither own nor have any ownership interest in any real property located in the State of Texas.  I have never owned real property in Texas.

9.     I do not lease or rent any real property in the State of Texas for any purpose.  I have never leased or rented real property in Texas.

10.    I do not maintain a post office box or other mailing address in Texas.

11.    I do not maintain a phone number in Texas, or with a Texas area code.

12.    I neither own nor have any ownership interest in any personal property located in the State of Texas.  I have never leased or rented any personal property in Texas.

13.    I do not pay taxes to the State of Texas, and have never done so.

14.    I have neither sought admission to nor have I been admitted *pro hac vice* to any Texas State or Federal Court.

15.    In addition to having never physically set foot in Texas, I have never participated in any meetings, hearings, witness interviews, or depositions in Texas via video conference, Skype, or any similar "virtual presence" technology.

16.    To the best of my knowledge, I have never granted an interview to a Texas-based newspaper, television station, radio station, or any other media outlet exclusively serving Texas.

17.    I hold no professional licenses or credentials issued by the State of Texas.

Pursuant to 28 U.S.C. § 1746, I declare under penalties of perjury that the foregoing is true and correct.  Executed this 1st day of November, 2019.

DOUGLAS WIGDOR

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
Sherman Division

ED BUTOWSKY,

       Plaintiff,

  v.

DOUGLAS H. WIGDOR, WIGDOR LLP,
ROD WHEELER,

       Defendants.

Case No.:    4:19-cv-00577

## DECLARATION OF DOUGLAS H. WIGDOR ON BEHALF OF WIGDOR LLP

I, Douglas Wigdor, hereby declare as follows:

1.    My name is Douglas H. Wigdor.  I am over eighteen years of age and am fully competent and authorized in all respects to execute this affidavit on behalf of Wigdor LLP.  I have personal knowledge of the facts hereinafter stated, which are true and correct, and if called as a witness, would testify competently thereto.

2.    I am the Founding Partner of the law firm Wigdor LLP.

3.    Wigdor LLP is a New York-based litigation boutique, specializing in plaintiff's-side employment litigation.  The Firm presently has a total of 12 attorneys, one law clerk, and approximately 12 support staff.

4.    Wigdor LLP does not have an office or any other operations located in the State of Texas.

5.    None of Wigdor LLP's attorneys or staff are residents of the State of Texas.

6.    Wigdor LLP does not own or rent any real or personal property located in the State of Texas.  Wigdor LLP has never owned or rented any real or personal property in Texas.

7.     Wigdor LLP does not maintain a phone number in Texas, or with a Texas area code.

8.     Wigdor LLP does not pay taxes in the State of Texas.

9.     Wigdor LLP does not receive any revenue from sources in the State of Texas.

10.    None of the attorneys practicing at Wigdor LLP are admitted to the State Bar of Texas.

11.    None of the attorneys practicing at Wigdor LLP are admitted to any of the four United States District Courts located in Texas.

12.    None of the attorneys practicing at Wigdor LLP has ever been admitted *pro hac vice* to any court in Texas, state or federal.

13.    Wigdor LLP has never filed any pleadings in a case in the State of Texas.

14.    Wigdor LLP does not direct any marketing or business development efforts specifically towards the State of Texas.  Wigdor LLP has never purchased advertising from any newspapers, TV stations, radio stations, or other media outlets based in Texas,

15.    Wigdor LLP has never sought coverage from any media outlets that exclusively serve the State of Texas.

Pursuant to 28 U.S.C. § 1746, I declare under penalties of perjury that the foregoing is true and correct.  Executed this 1st day of November, 2019.

DOUGLAS WIGDOR