IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

**Edward Butowsky,**

    Plaintiff,

v.

**Douglas H. Wigdor, et al.,**

    Defendants

Case No. 4:19-cv-00577

**PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS PLANTIFF'S COMPLAINT FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENT SERVICE OF PROCESS**

NOW COMES Edward Butowsky, the Plaintiff, responding in opposition to the Defendants' Rule 12(b)(2) & (5) Motion to Dismiss Plantiff's Complaint For Lack of Personal Jurisdiction and Insufficient Service of Process (hereinafter "Motion")(Doc. No. 8) as follows:

**Introduction**

In the Original Complaint, the Plaintiff alleged that Defendant Douglas H. Wigdor conspired with David Folkenflik of National Public Radio to defame him. Original Complaint 2 and 51-68, ¶¶2 and 135-160. The Plaintiff further elaborated on their collusive arrangement in *Ed Butowsky v. David Folkenflik, et al.*, which is pending before this Court as Case No. 4:18-cv-00442-ALM-CMC, and he requests that the Court take judicial notice of his Second Amended Complaint (Doc. No. 72) in that case, which was filed on September 30, 2019. As explained below, Defendant Wigdor is subject to the Court's jurisdiction for the same reason his co-conspirator, Mr. Folkenflik, is subject to the Court's jurisdiction. The Plaintiff further requests that the Court take judicial notice of his Motion for Extension (Doc. No. 2) and his

SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR EXTENSION (Doc. No. 7). As set forth in those documents, this case should not be dismissed for lack of service. Finally, the Plaintiff intends to amend his complaint not later than January 26, 2019 to add facts and elaborate on facts that are relevant to his racketeering claims. In addition to elaborating on the racketeering enterprise, the amended complaint will state additional facts relevant to personal jurisdiction, therefore the Plaintiff requests that the Court refrain from ruling on the MOTION until such time as the amended complaint is filed.

### Argument

**1. This case should not be dismissed for lack of service.**

The plain text of Fed. R. Civ. P. 4(m) indicates that a court has discretion to either dismiss a case or grant an extension of time to serve the summons and complaint. Once "good cause" is shown, however, an extension of time then becomes mandatory:

> Rule 4(m) permits a district court to dismiss a case without prejudice if the plaintiff fails to serve the defendant within 120 days of filing the complaint. *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir.1996). If, however, the plaintiff can establish good cause for failing to serve the defendant, the court must extend the time for service. *Id*. Even if the plaintiff lacks good cause, the court has discretionary power to extend the time for service. *Id*.

*Millan v. USAA Gen. Indem. Co.*, 546 F.3d 321, 325 (5th Cir. 2008). If this case is dismissed, the Plaintiff will lose his primary claim for business disparagement, because that claim arose on August 1, 2017, *see* ORIGINAL COMPLAINT 51, ¶136, and the limitations period for a business disparagement claim is two years. *See Dwyer v. Sabine Min. Co.*, 890 S.W.2d 140, 142 (Tex. App.—Texarkana 1994, writ denied) and TEX.CIV.PRAC. & REM.CODE ANN. § 16.003.

In DEFENDANTS DOUGLAS H. WIGDOR AND WIGDOR LLP'S OPPOSITION TO PLAINTIFF'S MOTION FOR EXTENSION OF TIME TO SERVE DEFENDANTS (Doc. No. 9), the Defendants suggest that their defamatory statements were republished within the last two years, but that is inaccurate. With the exception of a republished quote in the March 29, 2018 article referenced in Paragraph

186 of the ORIGINAL COMPLAINT, the various republications occurred more than two years ago. More importantly, Texas follows the single publication rule, *see Mayfield v Fullhart*, 444 S.W.3d 222, 227 (Tex.App. – Houston [14th Dist.], pet. denied), so limitations began to run on August 1, 2017, when the defamatory statements were first made. Insofar as dismissal would prevent the Plaintiff from bringing business disparagement claims, this case should not be dismissed pursuant to Fed. R. Civ. 12(b)(5).

> If "the applicable statute of limitations likely bars future litigation, a district court's dismissal of claims under Rule 4(m) should be reviewed under the same heightened standard used to review a dismissal with prejudice." Because "dismissal with prejudice 'is an extreme sanction that deprives a litigant of the opportunity to pursue his claim,' " it "is warranted only where a clear record of delay or contumacious conduct by the plaintiff exists and a lesser sanction would not better serve the interests of justice." To warrant dismissal, we must find a delay "longer than just a few months; instead, the delay must be characterized by significant periods of total inactivity."

*Thrasher v. City of Amarillo*, 709 F.3d 509, 512–13 (5th Cir. 2013)(citations omitted); *see also Aguirre v. ISC Constructors, LLC*, 70 F. Supp. 3d 766, 775 (E.D. Tex. 2014).

**2. The Court has personal jurisdiction over the Defendants**

The Plaintiff does not contend that the Court has general jurisdiction over the Defendants, only that it has specific jurisdiction over the Defendants. "Specific jurisdiction applies when a non-resident defendant 'has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Halliburton Energy Services, Inc. v. Ironshore Specialty Ins. Co.*, 921 F.3d 522, 539–40 (5th Cir. 2019), quoting *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001) (internal citation omitted). Like David Folkenflik in Case No. 4:18-cv-00442-ALM-CMC, as well as the defendants in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), the Wigdor Defendants in this case knowingly and deliberately targeted a smear campaign at the Plaintiff, whom they knew to be a resident of Texas. *See, e.g.*, ORIGINAL

COMPLAINT 8, ¶12.[1]

The Defendants herein should, like the *Calder* defendants, expect to face trial in the state where they directed their *intentional* tort. 465 U.S. at 788–89, 104 S. Ct. at 1486–87. The Defendants try to preempt that argument by citing various appellate cases that interpreted *Calder* narrowly, but those cases predate *Walden v. Fiore*, 571 U.S. 277, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014), wherein the Supreme Court itself clarified exactly what it meant in *Calder*:

> The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The strength of that connection was largely a function of the nature of the libel tort. However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (and read and understood by) third persons. *See* RESTATEMENT (SECOND) OF TORTS § 577, Comment b (1976); *see also ibid*. ("[R]eputation is the estimation in which one's character is held by his neighbors or associates"). Accordingly, the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens. Indeed, because publication to third persons is a necessary element of libel, *see id.*, § 558, the defendants' intentional tort actually occurred in [C]alifornia. *[K]eeton*, 465 U.S., at 777, 104 S.ct. 1473 ("**the tort of libel is generally held to occur wherever the offending material is circulated**"). In this way, the "effects" caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to California, not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

*Walden*, 571 U.S. at 287–88, 134 S. Ct. at 1123–24 (emphasis added). The "crux" of *Calder*, and the crux of the Court's basis for jurisdiction over the Wigdor Defendants, is the fact that they directed an intentional tort into another state, where the plaintiff lived and worked. In *Keeton v. Hustler Magazine, Inc.*, a magazine was subject to personal jurisdiction because it was a "national publication aimed at a nationwide audience." 465 U.S. 770, 781 (1984). Thus, the Court held, "[t]here is no unfairness in calling it to answer for the contents of that publication wherever a substantial number of copies are regularly sold and distributed." *Id*. The same is true

---

1  The ORIGINAL COMPLAINT does not allege that the Defendants acted with mere negligence or recklessness, but that they intentionally defamed the Plaintiff as part of an extortion scheme. *See* ORIGINAL COMPLAINT 12-13, ¶¶21-26.

here.

Another helpful case is *TV Azteca v. Ruiz*, 490 S.W.3d 29 (Tex. 2016), which summarizes the state of the law both before and after *Walden*. In *TV Azteca*, a Mexican broadcasting company and one of its anchors acknowledged that allegedly defamatory statements were broadcast into Texas, but they argued that the plaintiff must satisfy the "subject-and-sources-test" in order to prove minimum jurisdictional contacts. The plaintiff lived in Texas at the time she filed suit, but the story concerned a criminal case against her when she previously lived in Mexico, ergo the defendants argued that the focus of the story was in Mexico. The *TV Azteca* defendants argued that jurisdiction was lacking because the story was not focused on Texas.

> Citing the Fifth Circuit's decision in *Clemens*, [Plaintiff] Trevino asserts that the subject-and-sources test is only one method of proving that a defamation defendant targeted the forum state, and it need not be met when evidence otherwise establishes that the defendant's statement was "aimed at or directed to" the state. *See Clemens*, 615 F.3d at 380. Petitioners disagree, arguing that "whether the forum state is the focal point of the story is a crucial criterion in determining whether the story is directed at the forum state." We agree with Trevino.
>
> When the Fifth Circuit first articulated the subject-and-sources test in *Revell*, it emphasized "[a]t the outset" that *Calder*'s " 'effects' test is but one facet of the ordinary minimum contacts analysis, to be considered as part of the full range of the defendant's contacts with the forum." 317 F.3d at 473 (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir.2001)). Adhering to *Revell* in *Fielding*, the court explained that a plaintiff can establish specific jurisdiction over a defamation defendant by showing either "(1) a publication with adequate circulation in the state" under *Keeton*, or "(2) an author or publisher who 'aims' a story at the state knowing that the 'effects' of the story will be felt there" under *Calder*. *Fielding*, 415 F.3d at 425. And then in *Clemens*, the court read *Calder* to require the subject-and-sources test, 615 F.3d at 380, but it did not hold that *Calder* established the only test for determining personal jurisdiction over a defamation defendant. *See id.* at 384 (Haynes, J., dissenting) ("[T]he *Calder* effects test is simply an additional, but not exclusive, vehicle for establishing personal jurisdiction over a nonresident defendant who may never have been to the forum state.").
>
> Even if the Fifth Circuit recognized the subject-and-sources test as the exclusive method for establishing personal jurisdiction over a defamation defendant, we would disagree. The test determines whether the forum state was "the focal point ... of the story," which in turn determines whether the defendant purposefully availed itself of the benefits of conducting activities in the state sufficient to establish minimum contacts. *Calder*, 465

    U.S. at 788–89, 104 S.Ct. 1482. In *Keeton*, the plaintiff had no relevant contacts with New Hampshire, and the offending articles did not address events related to or drawn from sources within that state. 465 U.S. at 772–73, 104 S.Ct. 1473. Nevertheless, the Court found minimum contacts because the defendant had "continuously and deliberately exploited the New Hampshire market." *Id*. at 781, 104 S.Ct. 1473. We must likewise determine whether Petitioners had "an intent or purpose to serve the market in the forum State." *Moki Mac*, 221 S.W.3d at 577 (quoting *Asahi*, 480 U.S. at 112, 107 S.Ct. 1026).

*TV Azteca*, 490 S.W.3d at 48-49. It is worth noting that the Texas Supreme Court found specific jurisdiction over both the broadcaster and the anchor. *Id*. at 56-57. The Wigdor Defendants argue that the television station in *TV Azteca* was deliberately trying to develop a market in Texas, but that misses the point. The anchor was not individually doing business in Texas, just like David Folkenflik was not individually doing business in Texas when he broadcast his story about the Plaintiff. Nonetheless, the anchor and Mr. Folkenflik were subject to Texas jurisdiction, just like the Wigdor Defendants are subject to Texas jurisdiction, because their smear campaigns were targeted at Texas residents.

  In the context of copyright, courts have held that one who provides an infringing publication to a national distributor is presumed to know that it will reach every state, ergo any state may assert personal jurisdiction. *Evergreen Media Holdings, LLC v. Warren*, 105 F. Supp. 3d 192, 198 (D. Conn. 2015)(citing cases). Analogously, the Wigdor Defendants made their defamatory statements on programs and publications targeted to a national audience, thus they knew that the effects would be felt in Texas, where the Plaintiff lives and works. For that reason, the Wigdor Defendants are subject to the Court's specific jurisdiction.

  It has long been settled that "a plaintiff can establish specific jurisdiction over a defamation defendant by showing either '(1) a publication with adequate circulation in the state' under *Keeton*, or '(2) an author or publisher who 'aims' a story at the state knowing that the 'effects' of the story will be felt there' under *Calder*." *TV Azteca*, 490 S.W.3d at 48-49, citing *Fielding*, 415 F.3d at 425. The Plaintiff herein has established both. Under these circumstances,

the Wigdor Defendants cannot plausibly allege any surprise or unfairness about being called before a Texas court.

## Conclusion

The Defendants' MOTION should be denied in all respects.

Respectfully submitted,

/s/ Ty Clevenger
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**

## CERTIFICATE OF SERVICE

I certify that a copy of this document was filed electronically with the Court's ECF system on November 19, 2019, which should result in automatic notification to all counsel of record.

/s/ Ty Clevenger
Ty Clevenger