**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| **Edward Butowsky,** | |
| Plaintiff, | |
| **v.** | **Case No. 4:19-cv-00577-ALM-kpj** |
| **Douglas H. Wigdor, et al.,** | |
| Defendants | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO SUPPLEMENTAL RULE 12(B)(2) & (5) MOTION TO DISMISS COMPLAINT

NOW COMES Edward Butowsky, the Plaintiff, responding in opposition to the Wigdor Defendants' SUPPLEMENTAL RULE 12(B)(2) & (5) MOTION TO DISMISS PLAINTIFF'S COMPLAINT, OR IN THE ALTERNATIVE, PLAINTIFF'S FIRST AMENDED COMPLAINT, FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENT SERVICE OF PROCESS (hereinafter "SUPPLEMENTAL MOTION") (Doc. No. 15) as follows:

### Introduction

The most remarkable thing about the SUPPLEMENTAL MOTION is the near-total absence of authority. The Wigdor Defendants make bold pronouncements about the law based entirely on their own say-so, and that's because the weight of authority is uniformly contrary to their arguments. In the entire seven-page rant, the Wigdor Defendants cite only two cases and no secondary sources. Both cases are cited for the same point and, as explained below, both cases are completely inapposite since the Plaintiff is not arguing that the Court has general personal jurisdiction over the Wigdor Defendants.  By failing to address issues or cite relevant authority, the Wigdor Defendants have waived their objections. The Plaintiff incorporates by reference his RESPONSE IN OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR LACK OF  PERSONAL

JURISDICTION AND INSUFFICIENT SERVICE OF PROCESS (Doc. No. 10), and notwithstanding waiver of the issues, he will address the Defendants' new arguments below.

**Argument**

I.  **The Plaintiff's First Amended Complaint is the only complaint before the Court, regardless of how much the Defendants dislike it.**

"An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *Stewart v. City of Houston Police Dept*., 372 Fed. Appx. 475, 478 (5th Cir. 2010), quoting *King v. Dogan*, 31 F.3d 344, 346 (5th Cir.1994).  The Wigdor Defendants argue that the Plaintiff could not amend his complaint without permission from the Court, but of course they offer no authority whatsoever for that argument.  According to Fed. R. Civ. P. 15(a)(1)(B), the Plaintiff had the unilateral right to amend his complaint insofar as he filed his amended complaint within 21 days of the Defendants' first motion to dismiss.

The real issue is whether the Plaintiff can serve the newly-added Defendants prior to the time that the Court rules on his motion to extend time for service on the original Defendants. The Wigdor Defendants pronounce on their own say-so that he cannot, but actual authority says otherwise.

> [T]he 120–day period provided by Rule 4(m) is not restarted by the filing of an amended complaint *except as to those defendants newly added in the amended complaint. See Carmona v. Ross*, 376 F.3d 829 (8th Cir.2004); 4B Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1137, at 377 (3d ed.2002); 1 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 4.80 (3d ed.1997). This construction of the rule prevents the plaintiff from repeatedly filing amended complaints "to extend the time for service indefinitely," *Del Raine v. Carlson*, 826 F.2d 698, 705 (7th Cir.1987). In particular, if we read Rule 4(m) to refer to the most recently filed version of the complaint, regardless of whether the defendant to be served was newly added, dilatory plaintiffs could evade the rule's time deadline by taking advantage of the opportunity under Fed.R.Civ.P. 15(a) to amend the complaint once as of right before a responsive pleading is served; a plaintiff who had never bothered to serve any defendant could avoid altogether the original 120–day deadline simply by filing an amended complaint when it

- 2 -

felt like effecting service. Accordingly, we read "service ... upon a defendant within 120 days after the filing of the complaint," Rule 4(m), to refer to filing of the first version of the complaint *naming the particular defendant to be served*.

*Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1148–49 (10th Cir. 2006)(emphasis added).  The Fifth Circuit has not reached the issue, but every district court in the Fifth Circuit that has cited this excerpt from *Bolden* has cited it with approval. *See, e.g., Copeland v. EMC Mortgage LLC*, 1:16CV159-HSO-JCG, 2016 WL 7634455, at *5 (S.D. Miss. Dec. 21, 2016); *Warren v. Bituminous Cas. Co.*, CIV.A. 13-2354, 2014 WL 348544, at *2 (E.D. La. Jan. 31, 2014); and *Bustinza v. Perez*, CV B-09-231, 2013 WL 12400115, at *10 (S.D. Tex. Jan. 22, 2013); *see also Lee v. Airgas Mid-S., Inc.*, 793 F.3d 894, 898 (8th Cir. 2015)(same) and *Brait Builders Corp. v. Massachusetts, Div. of Capital Asset Mgmt.*, 644 F.3d 5, 9 (1st Cir. 2011)(same). In fact, the Plaintiff has not found any contrary authority anywhere, and that probably explains why the Defendants did not bother citing any authority.

If the foregoing holdings are applied to this case, then Fed. R. Civ. P. 4(m) grants the Plaintiff 90 days from the filing of the First Amended Complaint (hereinafter "FAC") to serve the newly-added Defendants.  The Plaintiff intends to serve the Wigdor Defendants immediately after the holidays if not during the holidays, ergo most of the Defendants (*i.e.*, Defendants Christensen, Willemin, Gottlieb, and Pearson) will be parties in this case regardless of how the Court rules on the motion for an extension of time to serve.  Since at least four of the seven Defendants will be parties to this case, it makes all the more sense to grant the Plaintiff an extension of time to serve the remaining three Defendants. Otherwise, the Plaintiff will have to file a new case and move to consolidate the new case with this one.

## II.  The Court has personal jurisdiction over all Defendants.

In his incorporated Response in Opposition to Motion to Dismiss Plaintiff's Complaint for Lack of  Personal Jurisdiction and Insufficient Service of Process, the

Plaintiff explained at length why the Wigdor Defendants' smear campaign subjected them to personal jurisdiction in Texas. In that response, the Plaintiff expressly disavowed any claim that the Court has *general* jurisdiction over the Defendants, instead arguing that the Court has *specific* jurisdiction over the Defendants.  In the SUPPLEMENTAL MOTION, the Wigdor Defendants attempt a bait-and-switch. They cite only two cases in the entire document, and both excerpts they cite pertain to *general* jurisdiction rather than *specific* jurisdiction. SUPPLEMENTAL MOTION 6, citing *Bowles v. Ranger Land Sys.*, 527 F. App'x 319, 321 (5th Cir. 2013) and *Sangha v. Navig8 Ship Management Private Ltd.*, 882 F.3d, 96, 101-02 (5th Cir. 2018). In other words, the Wigdor Defendants erected and attacked a straw man by rebutting an argument that the Plaintiff had expressly disavowed.

The Plaintiff's arguments in his earlier response speak for themselves, so he will now address the jurisdictional issues that the Wigdor Defendants ignored in their latest motion. All of the Defendants are alleged participants in an extortion scheme. *See* FAC 2,4, 8, 44, and 48, ¶¶1, 5, 6, 10, 114, 127.  In fact, the primary predicate act in support of the Plaintiff's racketeering claim is attempted extortion. *Id.* at 82, ¶191; *see also* 18 U.S.C. § 1961, incorporating 18 U.S.C. § 1952 (use of mail or interstate or foreign travel to further attempted extortion).  As set forth below, extortion is an intentional tort than can subject a non-resident defendant to personal jurisdiction, while the racketeering statute provides a separate basis for personal jurisdiction over a non-resident defendant. Personal jurisdiction, meanwhile, is an individual right that is subject to waiver. *Greenwich Ins. Co. v. Capsco Indus., Inc.*, 934 F.3d 419, 422 (5th Cir. 2019), citing *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 655 n.20 (5th Cir. 2002). By failing to address either extortion or racketeering as bases for personal jurisdiction, the Wigdor Defendants have waived objection to personal jurisdiction on those grounds. *See Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 722 (E.D. Tex. 2019)(a party waives an issue by failing to adequately

brief it), citing *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008); and *Casares v. Agri-Placements Intern., Inc.*, 12 F. Supp. 3d 956, 966 (S.D. Tex. 2014)(a party waives objections to personal jurisdiction by failing to assert the objections in a 12(b) motion). Notwithstanding the waiver, the Plaintiff will address both bases for jurisdiction below.

An act of extortion can occur in multiple places, namely the place(s) where the extortionate communications were transmitted and the place(s) where they were received, ergo the perpetrator is subject to the jurisdiction of either location. In *United States v. Royer*, for example, extortionate communications were directed into the Eastern District of New York from other jurisdictions, and the Second Circuit held that venue for the extortion and racketeering charges was proper in New York.  549 F.3d 886, 895 (2008); *see also United States v. Brika*, 416 F.3d 514 (6th Cir. 2005)(Venue for prosecution for using a telephone to extort money in exchange for the release of a kidnapped person was proper in the Southern District of Ohio, where the calls were received) and *United States v. Lewis*, 797 F.2d 358 (7th Cir. 1986) (Prosecution for attempted extortion may be held in any district where there is realistic probability of required effect on interstate commerce, even though crime is completed with demand for payment).  Likewise, in the civil context, "a single communication directed at the forum can establish personal jurisdiction where the content of that communication gives rise to an intentional tort for which jurisdiction is sought." *Van Rooyen v. Greystone Home Builders*, LLC, 295 F. Supp. 3d 735, 743 (N.D. Tex. 2018), quoting *Fairchild v. Barot*, 946 F.Supp.2d 573, 578 (N.D. Tex. 2013), in turn citing *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

> That a state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an intentional or physically harmful tort done elsewhere, with respect to any claim arising from these effects, has been recognized by the American Law Institute, RESTATEMENT (SECOND) OF CONFLICT OF LAWS, § 37. In pertinent part, Comment e. of Section 37, states: "When the act was done with the intention of causing

the particular effects in the state, the state is likely to have judicial jurisdiction though the defendant had no other contact with the state. This will almost surely be so when the effect involves injury to person or damage to tangible property." *Id*. at 54 and 57 (1988 Revision). That, under certain circumstances, the state is likely to have judicial jurisdiction even when the defendant did not intend to cause the particular effect in the state but could reasonably have foreseen that it would result from his act done outside the state, is recognized by the Restatement as follows:

> The fact that the effect in the state was only foreseeable will not of itself suffice to give the state judicial jurisdiction over the defendant. Judicial jurisdiction is likely to exist in such a case, however, if it was somewhat more than merely foreseeable that the defendant's act would cause the particular effect in the state.... Jurisdiction will also exist when, in addition to the effect being foreseeable, the defendant has other relationships with the state.

*Id*., at 55, 58. (citing, inter alia, *Eyerly Aircraft Co. v. Killian*, 414 F.2d 591, 597–98 (5th Cir.1969)).

*Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 629–30 (5th Cir. 1999); *see also Hawkins v. Upjohn Co.*, 890 F. Supp. 601, 608 (E.D. Tex. 1994)(Personal jurisdiction over non-resident defendant proper where "the alleged tortfeasor's intentional actions were purposefully directed toward the forum state and the tortfeasor had knowledge that the brunt of the injury would be felt by a particular resident of the forum state"), citing *In Southmark Corp. v. Life Investors*, 851 F.2d 763, 772 (5th Cir.1988). Extortion obviously is an intentional tort, *see, e.g., Bowles v. Reed*, 913 S.W.2d 652, 663 (Tex. App.—Waco 1995, writ denied), and the Wigdor Defendants communicated the extortionate demand to Texas, where the intended effect of the shakedown would be felt. FAC 2,4, 8, 44, and 48, ¶¶1, 5, 6, 10, 114, 127.

Again, the Wigdor Defendants failed to address either extortion or the RICO statute as bases for personal jurisdiction, therefore they have waived the right to object. They have the high burden under RICO of establishing that a trial in Texas would be "'so gravely difficult and inconvenient' that [they] unfairly [are] at a 'severe disadvantage' in comparison to [their] opponent." *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 948 (11th Cir. 1997). They have not so much as attempted to meet that burden. Even so, the Plaintiff will

elaborate on RICO jurisdiction over all Defendants. Suppose, for example, that Defendant

Wheeler, a Maryland resident, argues that he did not have minimum contacts with Texas insofar

as he did not personally relay the extortionate demand to the Plaintiff.

> [18 U.S.C. § 1965] "was intended to enable a plaintiff to bring before a single court for trial all members of a nationwide RICO conspiracy." *Dale v. Frankel*, 131 F.Supp.2d 852, 861 (S.D. Miss. 2001) (citing *Anchor Glass Container Corp. v. Stand Energy Corp.*, 711 F.Supp. 325, 330 (S.D. Miss. 1989); *Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv. Inc.*, 788 F.2d 535 (9th Cir. 1986); and *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 672 (7th Cir. 1987) ). "[B]y authorizing nationwide service of process, [§ 1965] operates in some cases to confer personal jurisdiction over defendants who would not otherwise be within the court's jurisdictional reach." *Dale v. Frankel*, 131 F.Supp.2d 852, 861 (S.D. Miss. 2001) (citing *Anchor Glass Container Corp. v. Stand Energy Corp.*, 711 F.Supp. 325, 330 (S.D. Miss. 1989) ).

> The Fifth Circuit implicitly addressed the issue of personal jurisdiction under RICO actions in *Caldwell v. Palmetto State Savings Bank of South Carolina*, 811 F.2d 916 (5th Cir. 1987). In *Caldwell*, the Fifth Circuit, "after noting RICO created nationwide service of process, engaged in a due process analysis. In so doing, the court analyzed whether the defendants had minimum contacts with Texas. The court concluded the non-resident defendant did not have the requisite contacts with Texas; therefore, the court held that the district court lacked personal jurisdiction. As such, the court without stating its reasoning, held that under RICO, it was required to determine whether at least one of the non-resident defendants had minimum contacts with Texas." *Hawkins v. Upjohn Co.*, 890 F.Supp. 601, 605 (E.D. Tex. 1994) (citing *Caldwell*, 811 F.2d at 918.) "[I]f one defendant before the court has the required minimum contacts with the forum state, then, other parties are subject to nationwide service of process." *Hawkins v. Upjohn Co.*, 890 F.Supp. 601, 605 (E.D. Tex. 1994) (emphasis in original) (citing 18 U.S.C. § 1965(b) ).

> Although the Fifth Circuit found in *Caldwell* that "the threshold requirement for application of § 1965 was not met," there is "nothing in *Caldwell* [that] suggests that the Fifth Circuit would have parted with virtually every other circuit to decline to employ RICO's nationwide service of process provisions if the proper factual predicate had been met.1 [Indeed,] district courts in [the Fifth Circuit] readily employ RICO's nationwide service of process." *David v. Signal Intern., LLC*, 588 F.Supp.2d 718, 724 (E.D. La. 2008) (citing *Rolls-Royce Corp. v. Heros, Inc.*, 576 F.Supp.2d 765 (N.D. Tex. 2008) and *Dale v. Frankel*, 131 F.Supp.2d 852 (S.D.Miss. 2001) ); *see also Hawkins v. Upjohn Co.*, 890 F.Supp. 601, 605 (E.D. Tex. 1994) (finding that the Fifth Circuit "implicitly recognized that RICO creates nationwide service of process" (citing *Caldwell v. Palmetto State Savings Bank of South Carolina*, 811 F.2d 916 (5th Cir. 1987) ). Accordingly, so long as one defendant is subject to personal jurisdiction in Texas, then the other parties are subject to nationwide service of process. *Hawkins v. Upjohn Co.*, 890 F.Supp. 601, 605 (E.D. Tex. 1994) (citing *Caldwell*, 811 F.2d at 918.)

*Vanderbilt Mortgage & Fin., Inc. v. Flores*, CV C-09-312, 2010 WL 11596564, at *2–3 (S.D. Tex. Feb. 3, 2010); *see also Ima Jean Robinson Springs v. Sec. Fin. Corp. of Texas*, SA-11-CA-797-OG, 2011 WL 13324311, at *13 (W.D. Tex. Nov. 21, 2011)(same). At the very least, the Wigdor Defendants are subject to the court's specific jurisdiction because they directed an intentional tort (extortion) into Texas. *Guidry*, 188 F.3d at 629–30. As a result, all of their racketeering co-conspirators are subject to the Court's expanded RICO jurisdiction. *Vanderbilt*, 2010 WL 11596564, at *2–3; *Hawkins*, 890 F.Supp. at 605; and *Herbstein v. Bruetman*, 768 F.Supp. 79 (S.D.N.Y. 1991)(When complaint invokes federal question jurisdiction under statute providing for nationwide service of process, jurisdictional inquiry focuses on the defendant's contacts with the entire United States, not just the forum state, and due process requires only that the defendant have minimum contacts with United States).

Even if all of the Defendants were amenable to suit in New York, that would not necessarily control the analysis of whether venue and personal jurisdiction are proper in Texas. *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 781–82 (N.D. Tex. 2008)("we conclude that the 'ends of justice' analysis is not controlled by the fact that all defendants may be amenable to suit in one forum. In so holding we disagree with the Ninth Circuit, which reached the contrary conclusion by inadequately considering the congressional intent underlying RICO and by ignoring federal antitrust legislation."), quoting *Cory v. Aztec Steel Building, Inc.*, 468 F.3d 1226, 1232 (10th Cir.2006). Finally, the Southern District of Texas found personal jurisdiction where a non-resident defendant conspired to commit and did commit an intentional tort directed at Texas residents. *Casares v. Agri-Placements Intern., Inc.*, 12 F. Supp. 3d 956, 970 (S.D. Tex. 2014). The plaintiffs in that case "made a prima facie showing that [the defendant] was a "primary participant in an alleged wrongdoing directed" at Texas residents. *Id*., citing *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482 (1984); *Brandt*, 195 F.3d at 212–15; and

*Gen. Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed. Appx. 775, 795 (5th Cir. 2007). In this case, all of the Defendants conspired to commit an intentional tort that was targeted at a Texas resident, therefore all of them are subject to the Court's personal jurisdiction. *Id*.

## Conclusion

The SUPPLEMENTAL MOTION should be denied in all respects.

Respectfully submitted,

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753
Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorney for Plaintiff Edward Butowsky**

## CERTIFICATE OF SERVICE

I certify that a copy of this document was filed electronically with the Court's ECF system on December 23, 2019, which should result in automatic notification to all counsel of record.

**/s/ Ty Clevenger**
Ty Clevenger