**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS**
Sherman Division

<table>
<tr><td>

ED BUTOWSKY,

      Plaintiff,

    v.

DOUGLAS H. WIGDOR, JEANNE M.
CHRISTENSEN, MICHAEL J. WILLEMIN,
DAVID E. GOTTLIEB, LAWRENCE M.
PEARSON, ROD WHEELER, AND WIGDOR
LLP,

      Defendants.

</td><td>

Case No.:    4:19-cv-00577 (ALM) (KPJ)

</td></tr>
</table>

**REPLY IN SUPPORT OF SUPPLEMENTAL RULE 12(B)(2) & (5) MOTION TO
DISMISS PLAINTIFF'S COMPLAINT, OR IN THE ALTERNATIVE, PLAINTIFF'S
FIRST AMENDED COMPLAINT, FOR LACK OF PERSONAL JURISDICTION AND
INSUFFICIENT SERVICE OF PROCESS**

Defendants Douglas H. Wigdor, Jeanne M. Christensen, Michael J. Willemin, David E.

Gottlieb, Lawrence M. Pearson, and Wigdor LLP (together, the "Wigdor Defendants") file this

Reply in Support of their Supplemental Motion to Dismiss the Complaint (Dkt. No. 1, the

"Original Complaint"), or in the alternative, the First Amended Complaint (Dkt. No. 13, the "First

Amended Complaint") filed by Plaintiff Ed Butowsky for lack of personal jurisdiction and for

insufficient service of process.

**ARGUMENT**

**I.**    **Butowsky's First Amended Complaint Should Be Considered Only If the Court
Grants Butowsky's Motion for an Extension of Time to Serve**

In their Supplemental Motion to Dismiss (Dkt. No. 15, "Supp. Mot."), the Wigdor

Defendants argued that Butowsky's First Amended Complaint should not be considered until

Butowsky perfects service of his Original Complaint, which has yet to be served on Defendants

Douglas Wigdor or Wigdor LLP ("Original Wigdor Defendants").  Butowsky's filing of the First

Amended Complaint after failing to timely serve his Original Complaint is a transparent strategy

to circumvent the service requirements of the Federal Rules.  The Court should reject this tactic

and consider the First Amended Complaint only if it also decides to grant Butowsky's Motion to

Extend Time for Service of the Original Complaint (Dkt. No. 2).

In his Supplemental Response (Dkt. No. 25, "Supp. Resp."), Butowsky claims that he

intends to serve the Wigdor Defendants soon, at which point "most of the Defendants" will be

parties in the case regardless of whether his motion to extend is granted.  *See* Supp. Resp. at 3.

Accordingly, Butowsky argues, it makes sense to grant his motion.  Granting his motion to extend

on that basis, however, would allow him to bootstrap service of an amended complaint to an

original complaint that was ***never*** timely served.  As stated in the Order Governing Proceedings in

this case, any defendant not served within 90 days "shall be dismissed, **without further notice**,"

unless Butowsky shows good cause why service has not been made.  *See* Dkt. No. 17 at 7

(emphasis in original).  Butowsky has unquestionably failed (or even attempted) to demonstrate

good cause for his failure to serve the Original Wigdor Defendants, and instead asks this Court to

ignore both the Federal Rules and its own governing orders.  The Court should reject this tactic,

decide Butowsky's motion for extension on its merits, and only consider the First Amended

Complaint if it grants that motion.

## II.    The First Amended Complaint Should be Dismissed, Even if Considered, for Lack of Personal Jurisdiction over the Wigdor Defendants

Even if the Court considers the First Amended Complaint, it should still dismiss this action

because Butowsky's amendment does nothing whatsoever to cure the fatal jurisdictional defects

in his Original Complaint.  Over the course of extensive briefing, the Wigdor Defendants have

demonstrated that they are not connected in any meaningful way to Texas, and that none of the

statements or actions that form the basis of Butowsky's claims were directed at or about Texas. That is true of both Butowsky's Original Complaint and First Amended Complaint.  The Court should, accordingly, dismiss this action as to the Wigdor Defendants because Butowsky has failed to allege facts sufficient to establish personal jurisdiction over them.  Nothing in Butowsky's Supplemental Response alters that conclusion.

As an initial matter, Butowsky claims the Wigdor Defendants attempted a "bait-and-switch" in their Supplemental Motion because the cases cited there relate to general jurisdiction, which Butowsky has disclaimed in this case.  *See* Supp. Resp. at 4.  But the Original Wigdor Defendants thoroughly briefed the lack of specific jurisdiction in their Motion to Dismiss (Dkt. No. 8) and the Wigdor Defendants explicitly referenced those arguments in their Supplemental Motion.  *See* Supp. Mot. at 7.  Contrary to Butowsky, the Wigdor Defendants have consistently argued a lack of personal jurisdiction—general or specific—since their first filing in this case.

Butowsky also argues that the Wigdor Defendants have somehow "waived" the right to argue against the theories for personal jurisdiction he forwards for the first time in his Supplemental Response.  *See* Supp Resp. at  4.  That argument is misplaced.  Once the Wigdor Defendants moved to dismiss for lack of personal jurisdiction, the burden fell to Butowsky "to establish that *in personam* jurisdiction exists." *Lahman v. Nationwide Provider Sols.*, No. 17 Civ. 00305 (ALM), 2018 WL 3035916, at *4 (E.D. Tex. June 19, 2018) (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)).  Given this burden, it is unclear why Butowsky believes the Wigdor Defendants would now be precluded from responding to his arguments in support of personal jurisdiction, particularly as those arguments were asserted for the first time in his response.  *See* Supp. Resp. at 4.  With the Wigdor Defendants having challenged the existence of personal jurisdiction in their first filing in this case, the burden is on Butowsky to establish its

existence, and the Wigdor defendants were not obligated to attempt to guess as to what Butowsky's

arguments for jurisdiction would be.    Having challenged personal jurisdiction, the Wigdor

Defendants are permitted to reply to Butowsky's arguments for its existence.

Nonetheless, the arguments Butowsky forwards for personal jurisdiction in his

Supplemental Response are meritless.  First, he claims his allegations of "extortion" are sufficient

to establish personal jurisdiction over the Wigdor Defendants.  *See* Supp. Resp. at 4-6.  Second,

he claims that his RICO allegations provide further support for personal jurisdiction.  *See id.* at 6-

8.  Butowsky is wrong on both fronts.

Butowsky argues that his vague and conclusory allegations of "extortion" suffice to

provide the court with jurisdiction over the Wigdor Defendants.  But the cases he cites in support

of this theory all involve communications ***directed*** at or ***concerning*** the forum state.[1]  For example,

in *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999), a Texas-based corporation

brought a fraud claim against a citizen of Germany.  The Fifth Circuit in *Brandt* applied the

reasoning of *Calder v. Jones*, 465 U.S. 783 (1984), to determine that the defendant was subject to

specific jurisdiction in Texas based on letters, faxes, and phone calls to Texas that underlay the

fraud claim.  *See id.* at 211-12.  "Foreseeable injury alone is not sufficient to confer specific

jurisdiction," the court noted, "absent the direction of *specific acts toward the forum*."  *Id.* at 212

(emphasis added).    As the Fifth Circuit there concluded: "When the actual content of

communications *with a forum* gives rise to intentional tort causes of action, this alone constitutes

purposeful availment."  *Id.* at 213; *see also*, *e.g.*, *Fairchild v. Barot*, 946 F. Supp. 2d 573, 579

---

[1]     Butowsky also argues that a "perpetrator" of extortion is subject to jurisdiction in the
location an extortionate communication is received.  *See* Supp. Resp. at 5.  In support of that claim,
however, Butowsky cites cases related to venue.  *See id.*  Those venue cases have nothing to do
with the jurisdictional question at issue in this case.

(N.D. Tex. 2013) ("Fairchild's fraud claim is based on allegedly fraudulent communications—false financial statements, and emails and phone calls assuring Fairchild that he would be paid and should continue working.  Barot directed those communications to Fairchild in Texas."); *Guidry v. United States Tobacco Co.*, 188 F.3d 619, 630 (5th Cir. 1999) (out-of-state tobacco trade associations knowingly initiated and aimed misrepresentations at consumers of tobacco products in Louisiana);  *Van Rooyen v. Greystone Home Builders, LLC*, 295 F. Supp. 3d 735, 743 (N.D. Tex. 2018) ("The complaint allege[d] that all defendants, at various times, communicated fraudulent information related to the sale of real estate in Texas, and that plaintiffs' claims relate[d] to defendants' attempt to sell the [plaintiffs] real estate in the state of Texas, and/or fraudulent representations made that were related to the sale of real estate in Texas.")

With respect to Butowsky's allegations of "extortion," he claims in his Supplemental Response that "the Wigdor Defendants communicated [an] extortionate demand to Texas, where the intended effect of the shakedown would be felt."  Supp. Resp. at 6.  The First Amended Complaint, however, fails to establish (or even allege) anything of the sort.  Butowsky alleges that, prior to filing the Wheeler action, Defendant Wigdor sent a copy of the draft complaint to Butowsky's counsel and "summoned the Plaintiff's attorney, David B Harrison, to Wigdor's office [in New York] to discuss the complaint, hoping the Plaintiff would offer money in exchange for avoiding the negative publicity of the lawsuit."  First Amended Complaint ¶ 4.  Harrison's law offices are located in New Jersey.  *Id.* ¶ 193.  According to Butowsky, Defendant Wigdor "published the draft document to Harrison at Wigdor's law office" in New York.  *Id.* ¶ 25.  Butowsky also claims that allegedly "extortionate" demands made of non-party Fox News were "subsequently relayed to the Plaintiff in Texas, as Wigdor intended."  *Id.* ¶ 5.  These allegations

apparently supply the factual basis for Butowsky's conclusory jurisdictional argument that the Wigdor Defendants "attempt[ed] to extort the Plaintiff in Texas." *Id.* ¶ 19.

What all of these allegations lack—and what is necessary to support jurisdiction on Butowsky's theory—is a communication *concerned with or directed at* Texas.  Nowhere does Butowsky allege that any Wigdor Defendant actually directed a communication to Texas.  And he cannot plausibly argue that the substance of the "extortion"—whatever he believes the contours of that claim to be—concerned Texas.  The most Butowsky could argue regarding his "extortion" allegations is that there could be foreseeable secondary or indirect effects of such communications in Texas.  That, however, is inadequate to establish personal jurisdiction in this case.  *See, e.g., Brandt*, 195 F.3d at 212 ("Foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum.").  Moreover, Butowsky's allegations clearly allege that non-party Fox News was the focus of the alleged extortion, not Butowsky himself.  *See, e.g.*, First Amended Complaint ¶¶ 2 ("saw this as an opportunity to extort money from the company"), 4 ("scheme to extort Fox News"), 120 ("extort a global settlement . . . from Fox"), 132 ("extort and pressure Fox"); 193 (Wigdor traveled to England "for the ultimate purpose of extorting Fox to meet his $60 million settlement demands.").  Nowhere in his First Amended Complaint does Butowsky even allege that the Wigdor Defendants conveyed any type of monetary demand to Butowsky or his counsel, and in fact, Butowsky expressly acknowledges that "Wigdor did not invite the Plaintiff or his attorney, Harrison, to the mediation" involving Wigdor and Fox News in July 2017.  *Id.* ¶ 122.  Any alleged extortion of Fox News—a non-party located in New York—is simply not relevant to jurisdiction in Texas over Butowsky's claims.

Butowsky also invokes RICO as a basis for personal jurisdiction in Texas over the Wigdor Defendants, but this argument is equally misguided.  Under Fifth Circuit precedent, a RICO

plaintiff must, at a minimum, establish personal jurisdiction over one defendant before the court can exercise jurisdiction over any others.  In *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916 (5th Cir. 1987), the plaintiffs brought suit in the Northern District of Texas alleging, *inter alia*, that out-of-state defendants had violated RICO.  The Fifth Circuit affirmed dismissal of the RICO claim based on a lack of personal jurisdiction.  In so doing, it focused on "the language in § 1965(a) that provides a civil action may be instituted where a defendant 'resides, is found, has an agent, or transacts his affairs'" and cited with approval cases holding "that this language requires that a defendant be conducting business in the forum." *Id.* at 918.[2]  To exercise jurisdiction over any defendant in a RICO claim, therefore, a plaintiff must establish personal jurisdiction over at least one of them.  *See, e.g.*, *David v. Signal Int'l, LLC*, 588 F. Supp. 2d 718, 723-24 (E.D. La. 2008) ("the plaintiff must establish personal jurisdiction over at least one defendant under § 1965(a) before other non-resident defendants become subject to nationwide service of process").

In this case Butowsky has failed to establish personal jurisdiction over any Wigdor Defendant.  As fully briefed in the Original Wigdor Defendants' Motion to Dismiss, none of the allegedly defamatory statements in this case tie any of the Wigdor Defendants to Texas in a way that would support the exercise of personal jurisdiction there.  Nor do Butowsky's elliptical claims of "extortion" support jurisdiction:  He has failed to allege a communication connected with these claims that was *directed at or about* Texas.  As noted above, Butowsky makes quite clear that any alleged communications were intended to extort non-party Fox News, located in New York and with the alleged communications made in New York or New Jersey.  In sum, Butowsky has failed, despite now having had two "bites" at the "apple" and over five months since filing his (still

---

[2]     Butowsky's reliance on *Republic of Pan. v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 946 (11th Cir. 1997) is misplaced considering the Fifth Circuit's holding in *Caldwell*.

unserved) Complaint, to establish that the Wigdor Defendants have sufficient minimum contacts with Texas such that they can be haled into a Texas court consistent with due process.

## CONCLUSION

For each of the foregoing reasons, the Wigdor Defendants pray that the Court only consider the First Amended Complaint if it also decides to grant Butowsky's Motion for Extension of Time, and, pursuant to Rule 12(b)(2), grant their Motion to Dismiss the claims against the Wigdor Defendants in their entirety for lack of personal jurisdiction.

DATE: January 6, 2020                     Respectfully submitted,


**DYKEMA GOSSETT, PLLC**

*/s/ Christopher D. Kratovil*
Christopher D. Kratovil
State Bar No. 24027427
ckratovil@dykema.com
Adam Nunnallee
State Bar No. 24057453
anunnallee@dykema.com
1717 Main Street, Suite 4200
Dallas, Texas 75201
(214) 462-6400
(214) 462-6401 (fax)

*Counsel for the Wigdor Defendants*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon on all counsel of record on January 6, 2020, in compliance with the Federal Rules of Civil Procedure.

*/s/ Christopher D. Kratovil*